UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIA TULA and<br>ALMA MACIAS,<br><br>*Plaintiffs*<br><br>v.<br><br>ABM INDUSTRIES INCORPORATED,<br>ABM JANITORIAL SERVICES, INC.,<br>ABM JANITORIAL SERVICES-<br>SOUTH CENTRAL, INC., and<br>Primo Garcia<br><br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:12-cv-00787<br><br><br><br><br>Jury Demanded |

## COMPLAINT

To The Honorable Court:

Now Come Plaintiffs Maria Tula ("Ms. Tula") and Alma Macias ("Ms. Macias"), (collectively referred to as "Plaintiffs"), complaining of the conduct of Defendants ABM Industries Incorporated, ABM Janitorial Services, Inc, and ABM Janitorial Services-South Central, Inc. (collectively referred to as "ABM" or the "ABM Defendants") and Primo Garcia ("Mr. Garcia"), and for cause of action respectfully show this Court as follows:

### I. NATURE OF ACTION

1. The ABM Defendants subjected Plaintiffs Ms. Tula and Ms. Macias to outrageous sexual harassment by their supervisor, Mr. Garcia. The sexual harassment culminated in the ABM Defendants terminating Plaintiffs' employment and in retaliation for Plaintiffs opposing Mr. Garcia's sexual harassment. This action seeks justice for Plaintiffs against the ABM Defendants under TITLE VII of the Civil Rights Act (as amended), 42 U.S.C. Section 2000e *et seq.* and the Texas Commission on Human Rights Act, Chapter 21, Tex. Labor Code. Plaintiffs

also assert a common law claim of Intentional Infliction of Emotional Distress against Mr. Garcia.

## II. PARTIES

2.  Plaintiffs Maria Tula and Alma Macias are individuals who reside in and worked for the ABM Defendants in Austin, Travis County, Texas.

3.  Defendant ABM Industries Incorporated is a foreign corporation incorporated under the laws of the State of Delaware and doing business in Texas. The Defendant may be served by serving its registered agent, CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

4.  Defendant ABM Janitorial Services, Inc. is a foreign corporation incorporated under the laws of the State of Delaware and doing business in Texas. The Defendant may be served by serving its registered agent, CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

5.  Defendant ABM Janitorial Services-South Central Inc. is a foreign corporation incorporated under the laws of the State of California and doing business in Texas. The Defendant may be served by serving its registered agent, CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

6.  Defendant Primo Garcia is an individual who is believed to reside at 5108 Bob Wire Road, Austin, Texas, 78669.

## III. JURISDICTION AND VENUE

7.  This Court has jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. §1331 (Federal Question) and § 1367 (Supplemental Jurisdiction). This Court has personal jurisdiction

over the Defendants because each Defendant has sufficient contacts with this forum to give this Court general jurisdiction over each Defendant.

8.  Venue is proper in this Court under 28 U.S.C. § 1391(b). The events forming the basis of this suit occurred in Austin, TX.

## IV. SINGLE INTEGRATED ENTERPRISE

9.  The Defendants are divisions or departments of an integrated enterprise that provides janitorial services for commercial, industrial, institutional and retail facilities across the United States. The Defendants jointly market themselves and are under common control by virtue of overlapping directorships and intermingled operations.

10.  At all material times, Defendants have jointly acted, directly or indirectly, with respect to Plaintiffs.

## V. FACTS

11.  Ms. Tula began working for ABM in 2009. Her mother, Ms. Macias, began working for ABM in 2010. Both women worked overnight cleaning the inside of airplanes at the Austin Bergstrom airport in Austin, Texas. Their jobs included vacuuming and cleaning airplane cabins, cleaning bathrooms, picking up magazines, changing seat covers, and cleaning overhead compartments, food trays, walls, and windows.

12.  After Ms. Tula began at ABM, her supervisor, Primo Garcia, began making sexual advances towards her. Mr. Garcia told Ms. Tula things such as "I like the way you walk," "walk really sexy like that," and "you look like a horny person." Mr. Garcia sent text messages to Ms. Tula's personal cell phone that said things such as "What are you doing, pretty girl," "I like you," and "you are good looking."

13. Mr. Garcia's advances towards Ms. Tula became graphic and even more disturbing over time. Mr. Garcia sent obscene, vulgar text messages and pornographic photos to Ms. Tula's phone. For example, on at least three occasions, Mr. Garcia texted Ms. Tula photos of what he represented to her was his nude, erect penis. Mr. Garcia also sent pornographic photos to Ms. Tula's phone of couples having sex. In some of the text messages, Mr. Garcia told Ms. Tula (in Spanish) "I want to f*** you," and "Don't you want my cock?"

14. On one occasion in approximately the fall of 2010, Mr. Garcia called Ms. Tula when Ms. Tula was off work and at her home at approximately 1:00 or 2:00 a.m. Mr. Garcia told her that he was outside her residence and needed to have a serious conversation with her. Ms. Tula looked outside her window and saw Mr. Garcia's truck, however, she did not meet with Mr. Garcia or let him into her home.

15. Mr. Garcia's advances were frightening and frustrating to Ms. Tula. She was a single mother who did not speak English, with limited education, and her options for other employment were also limited. Ms. Tula felt intimidated and threatened by Mr. Garcia but also needed to keep her job and maintain a tolerable working relationship with Mr. Garcia. Nonetheless, on many occasions Ms. Tula told Mr. Garcia "no" and that she did not want to have a romantic or sexual relationship with him. In some instances Ms. Tula would try to deflect or stall his advances to not offend Mr. Garcia, however, she made it clear on many occasions that his advances were unwelcome.

16. At no point did Mr. Garcia and Ms. Tula ever have any sexual or romantic relationship.

17. Mr. Garcia also made inappropriate sexual advances towards Ms. Macias and other women who worked under him. For example, Mr. Garcia came up behind Ms. Macias and

began massaging her shoulders on one occasion. While he was touching her, Mr. Garcia told Ms. Macias "I can do it better than your husband." In front of Ms. Macias and Ms. Tula, Mr. Garcia openly touched and groped their female coworkers as they tried to work.

18. Mr. Garcia often made graphic sexual remarks in front of Ms. Macias and Ms. Tula, including talking about his "cock" and making vulgar sexual jokes and statements about women. For example, on one occasion Mr. Garcia openly spoke with a male co-worker and asked him words to the effect of "whose cock do you think would please them [referring to the women workers] more, mine or yours?"

19. As another example, Mr. Garcia and the male coworker openly and blatantly stared at a female worker as she bent over while she was cleaning. The male coworker asked Mr. Garcia words to the effect of "what kind of feast would you have with that?" and Mr. Garcia responded "Mmmm, you can't even imagine."

20. Mr. Garcia also told Ms. Tula that he had had a sexual relationship with another female coworker and had two young daughters with the employee, even though Mr. Garcia was married to another woman.

21. Ms. Tula did not initially tell her mother, Ms. Macias, about Mr. Garcia's graphic sexual advances and text messages to her because she was embarrassed, scared, and did not want to get her mother involved. However, Ms. Macias saw some of Mr. Garcia's text messages on her daughter's phone and asked her daughter about them. Ms. Tula then confided with her mother about Mr. Garcia's ongoing sexual advances and harassing behaviour towards her.

22. After learning that Mr. Garcia had been sexually harassing her daughter, Ms. Macias confronted Mr. Garcia about his actions. Mr. Garcia laughed and told Ms. Macias that "nobody will believe a wetback like you." Ms. Macias responded with words to the effect of

"wetback or not, when I get fed up with you I will report everything, including what you have been doing to Maria."

23.     Mr. Garcia made it clear to both Ms. Macias and Ms. Tula that they had better not report his sexual harassment, telling both women words to the effect that he knew where they lived and where Ms. Tula's son went to school. He told Ms. Macias and Ms. Tula that they and the other women at ABM wouldn't dare report him "because of my past," implying that he had a criminal history and might use physical force or violence against them. He also told both Ms. Macias and Ms. Tula words to the effect that it wouldn't work to report him because management would believe him and not them, suggesting that they would be fired.

24.     After Ms. Macias confronted Mr. Garcia about his sexual harassment, Mr. Garcia continued to make verbal sexual advances and comments to Ms. Tula and Ms. Tula continued to tell him "no." Mr. Garcia also continued making lewd sexual remarks in front of Ms. Macias and Ms. Tula.

25.     After Ms. Macias confronted Mr. Garcia about his sexual harassment and because Ms. Tula and Ms. Macias continued to reject Mr. Garcia's advances and opposed his sexual harassment, Mr. Garcia gradually began treating both women more harshly in an apparent effort to get them to quit. For example, Mr. Garcia pressured Ms. Macias or Ms. Tula to pay or "loan" him several hundred dollars in exchange for allowing them to take off vacation time. Mr. Garcia also criticized their work, made them go back and clean things again, and gave them additional work assignments.

26.     Within approximately a few weeks before Ms. Tula and Ms. Macias were fired, Mr. Garcia met privately with each woman and warned them that they should not attempt to report him for sexual harassment.

27. On or about July 15, 2011, ABM fired Ms. Tula and Ms. Macias as a part of a "sting" operation for allegedly stealing two cameras. On the morning of July 15, 2011, Ms. Tula found two cameras on a plane she was cleaning. The normal practice when workers found lost items was to place them on a cleaning cart and turn the items over to Mr. Garcia or to the "lead" worker at the end of the shift or earlier if there was a convenient time during the shift.

28. Because there had not been an opportunity to turn the cameras over during the shift, as was common, Ms. Tula took the cameras with her at the end of the shift to the supply room to give to Mr. Garcia or the lead. Neither Mr. Garcia nor the lead were in the supply room, however, so Ms. Tula called Mr. Garcia's cell phone and spoke with him about what to do with the cameras. Mr. Garcia told Ms. Tula that he was not in the building but he would meet her in the parking lot where she was parked and get the cameras.

29. As directed by Mr. Garcia, Ms. Tula took the cameras to the parking lot to give to Mr. Garcia. Ms. Macias, who rode to work with her daughter, accompanied Ms. Tula. When the two arrived at the parking lot, they were met by an ABM team lead and another employee, who told them to wait. Mr. Garcia and another man then arrived. The other man, who spoke only in English, asked to see the bag where Ms. Tula had placed the cameras and accused the women of stealing the cameras. Mr. Garcia said nothing in Ms. Tula's or Ms. Macias' defense and did not explain that he had asked them to bring the cameras out to him. Instead, Mr. Garcia took the women's badges and told them words to the effect that he would call them later. Mr. Garcia never called and ABM terminated both women's employment.

30. <u>Ms. Tula and Ms. Macias did not steal and were not attempting to steal the cameras as they were accused.</u> In fact, they were following Mr. Garcia's directive to bring him the cameras. Rather, ABM fired Ms. Tula and Ms. Macias as a direct result of a "set up" by Mr.

Garcia because the women would not accept his sexual advances and in retaliation for opposing his sexual harassment.

### VI. FIRST CAUSE OF ACTION – SEXUAL HARASSMENT

31. Plaintiffs repeat each of the foregoing allegations.

32. Plaintiffs are female.

33. Plaintiffs were employed by the ABM Defendants.

34. The ABM Defendants employed Plaintiffs.

35. During their employment with the ABM Defendants, Plaintiffs were subjected to harassment that was based upon their gender, female. The harassment was severe or pervasive. It was unwelcome. It altered the terms and conditions of Plaintiffs' workplace.

36. Mr. Garcia's sexual harassment of Plaintiffs culminated in one or more tangible employment actions, including the termination of their employment.

37. Plaintiffs suffered damages as a result of the ABM Defendants' sexual harassment in violation of Title VII of the Civil Rights Act and/or the Texas Commission on Human Rights Act.

38. The ABM Defendants acted with malice or with reckless disregard for Plaintiffs' statutorily protected rights.

39. An award of exemplary damages is therefore warranted.

### VII. SECOND CAUSE OF ACTION – RETALIATION

40. Plaintiffs repeat each of the foregoing allegations.

41. Plaintiffs opposed actions that were unlawful employment practices under Title VII of the Civil Rights Act and/or the Texas Commission on Human Rights Act including sexual harassment.

42. The ABM Defendants retaliated against Plaintiffs for opposing the unlawful employment practices, including termination of their employment.

43. Plaintiffs suffered damages as a result of the ABM Defendants' illegal retaliation in violation of Title VII of the Civil Rights Act and/or the Texas Commission on Human Rights Act.

44. The ABM Defendants acted with malice or with reckless disregard for Plaintiffs' statutorily protected rights.

45. An award of exemplary damages is therefore warranted.

## VIII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

46. Plaintiffs dual filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC"). At least one example of Mr. Garcia's sexual harassment and the termination of Plaintiffs' employment took place within 300 day (for Title VII purposes) and 180 days (for TCHRA purposes) prior to that date.

47. Plaintiffs have therefore timely filed charges of discrimination regarding the conduct at issue in this Complaint.

48. Plaintiffs' Complaint is filed within ninety days of Plaintiffs' receipt of a Notice of Right to Sue letter from the EEOC. This lawsuit has also been filed more than 180 days since filing a charge with the TWC.

## IX. THIRD CAUSE OF ACTION –
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiffs repeat each of the foregoing allegations.

50. Defendant Mr. Garcia's intentional actions, including the unwanted sexually harassing statements, text messages, and actions, pressuring Plaintiffs to give or "loan" him

money for vacation time, and setting up Plaintiffs to look as if they were stealing to justify the termination of their employment, were extreme and outrageous and violated Texas common law on Intentional Infliction of Emotional Distress.

51. Plaintiffs suffered severe emotional distress and damages as a result of Defendant Mr. Garcia's conduct.

52. Defendant Mr. Garcia acted with malice or with reckless disregard for Plaintiffs' rights.

53. An award of exemplary damages is therefore warranted.

## X. JURY DEMAND

54. Plaintiffs hereby file their demand for a trial by jury, in accordance with Federal Rule of Civil Procedure 38.

## XI. ATTORNEYS FEES

55. If Plaintiffs are prevailing parties, they seek fees under Title VII and/or the Texas Commission on Human Rights Act.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that this Court:

(a) Grant judgment in Plaintiffs' favor with regard to the claims pleaded above;

(b) Award all available legal and equitable and other relief (including back pay, reinstatement or front pay, compensatory and/or punitive damages);

(c) Award Plaintiffs their reasonable and necessary attorneys' fees;

(d) Award taxable court costs, including expert fees; and

(e) Provide any other relief to which the Court may deem Plaintiffs entitled

Respectfully submitted,

By: ___/s/ Robert W. Schmidt___

ANNA BOCCHINI
Texas State Bar No. 24057410
anna@equaljusticecenter.org
AARON M. JOHNSON
Texas State Bar No. 24056961
aaron@equaljusticecenter.org
EQUAL JUSTICE CENTER
510 S. Congress Ave., Suite 206
Austin, Texas 78704
Tel.: (512) 474-0007 ext-105
Fax: (512) 474-0008

ROBERT W. SCHMIDT
Texas State Bar No. 17775429
schmidt@crewsfirm.com
CREWS LAW FIRM, PC
701 Brazos, Suite 900
Austin, TX 78701
Tel: (512) 346-7077
Fax: (512) 342-0007

J. DEREK BRAZIEL
Texas Bar No. 00793380
jdbraziel@l-b-law.com
LEE & BRAZIEL, L.L.P.
1801 N. Lamar St. Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax

Counsel for Plaintiffs